IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GASPAR GONZALES MARTINEZ,<br>individually, and as Independent Administrator<br>of the Estates of B.M., a minor, and C.M., a<br>minor, and SARA MORENO FRANCO,<br>individually, and as next friend of E.G., a<br>minor. | §<br>§<br>§<br>§<br>§<br>§ | |
| Plaintiffs | § | Civil Action No. 1:13-cv-662 |
| | § | |
| VS. | § | |
| | § | |
| FORD MOTOR COMPANY | § | |
| | § | |
| Defendant | § | |

**PLAINTIFFS' COMPLAINT**

GASPAR GONZALES MARTINEZ, individually, and as Independent Administrator of the Estates of B.M., a minor, and C.M., a minor, and SARA MORENO, individually and as next friend for E.G., hereinafter referred to as "Plaintiffs," brings the following claims against FORD MOTOR COMPANY, and would respectfully show the Court and the jury the following:

**I.**
**PARTIES**

1.     Plaintiffs GASPAR GONZALES MARTINEZ, in his individual capacity, and as Independent Administrator of the Estate of B.M. and C.M., and as next friend of E.G., and SARA MORENO, individually and as next friend of E.G., are husband and wife and the parents of the decedents, B.M. and C.M., as well as E.G.  They reside in the Western District of Texas.

2.     Defendant Ford Motor Company ("Ford") is a Delaware corporation doing business in Texas and may be served with process through its registered agent, CT Corp, 350 North St. Paul, Dallas TX 75201.

**II.**
**JURISDICTION AND VENUE**

3.      This case involves damages of more than $75,000 and the parties are diverse.

Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. §1332.

4.      Venue of this cause is proper in the Western District pursuant to 28 U.S.C. §1391(b)

because a substantial portion of the events or omissions giving rise to Plaintiff's claims occurred

in Austin, Texas, which is within the Western District of Texas.

**III.**
**FACTS**

5.      On July 10, 2012, around 2:00 a.m., Gaspar Gonzales Martinez and his wife, Sara, were

asleep in their bed.

6.      Their two-year old daughter, E.G., was asleep in a crib in their bedroom.

7.      Their two boys, B.M., age seven, and C.M., age five, were asleep in bunk-beds in the

bedroom they shared.

8.      The family's Ford F-150 pick-up truck, which had not been driven or started in over a

week, was parked outside in their driveway.

9.      Unbeknownst to Plaintiffs, but well known to the Ford, the family's Ford F-150 was

essentially a time bomb capable of exploding because of a defective cruise control switch.

10.     In fact, hundreds of Ford F-150s and thousands of Ford vehicles with similar cruise

control switches had previously caught fire because of the switch's dangerous design.  Ford,

including its engineers and senior executives, knew the switch was defective and dangerous,

knew it rendered the vehicle exceedingly dangerous and deadly (*i.e.,* the truck would

spontaneously combust while off), knew the vehicle would cause deadly fires and explosions

when the ignition was off and the truck was parked, and knew the problem could be fixed for less than $25.

11.     Nevertheless, Ford sold the truck to millions of people anyway.  Placing profits over safety – just as it had done with the Pinto – Ford placed an incredibly dangerous vehicle onto the streets and delayed its recall for years.

12.     While Ford knew by 1999 that the design was dangerous and a potentially deadly, Ford did not begin recalling the defective vehicles until 2004.

13.     The initial recall letters did not adequately warn owners about the problem and the deadly fires persisted so the government had Ford issue several more recalls.

14.     Ford marketed the Ford F-150 to the Hispanic community via TV and radio in Spanish, magazines in Spanish, and newspapers in Spanish, and knew that thousands of consumers in Texas, Florida, California, New Mexico and Arizona who spoke only Spanish had purchased Ford F-150s.  Yet, Ford sent their recall notices to owners in the continental United States only in English.

15.     As a consequence, countless Hispanic purchasers of the deadly Ford F-150 who spoke or read only Spanish, including Plaintiffs, received no warning about the truck's tendency to explode while parked and off.

16.     On July 10, 2012, that is exactly what happened.  The family's F-150 truck exploded and caught Plaintiffs' house on fire.

17.     Tragically, smoke and fire engulfed the two little boys' bedroom, and the flames burned too hot for the little boys to escape.

18.     While Gaspar, Sara, and their baby girl E.G. survived the fire, their two beautiful little boys were not as fortunate.

19.     When firefighters finally reached them, B.M. and C.M. had passed away.

20.     According to the medical examiner, the boys suffered and died from conflagration injuries from the fire.

21.     Despite this horrific tragedy – which Ford has acknowledged was caused by the defective part at issue – and despite having been alerted that its warning discriminates against Spanish speaking Americans, Ford still has not issued a new warning in Spanish or offered a public apology.

22.     Nor has Ford adequately alerted the public that millions of defective Ford F-150 trucks capable and at an increasing risk of spontaneously exploding remain on the streets – parked at people's homes, churches and schools – and present a significant ongoing danger.

**IV.**
**CAUSES OF ACTION**

        **A.     FAILURE TO WARN**

23.     Plaintiffs incorporate the forgoing allegations and further allege the following:

24.     Ford had a duty to warn all consumers, not just English speaking consumers, about the dangerous design that led its F-150 trucks to explode.  Ford knew that thousands of Spanish speaking consumers had purchased this type of truck in Florida, Texas, Arizona, New Mexico and California.  In fact, Ford had marketed and advertised the vehicle in Spanish media outlets and knew that nearly all dealerships in these markets have bilingual sales persons.

25.     Yet, not only did Ford issue a grossly inadequate warning meant to confuse rather than warn, it did so only in English.   And it did so despite issuing warnings in Spanish to all truck owners in the Unites States territory of Puerto Rico.

26.     As a consequence, numerous Spanish speaking and/or ready truck owners, including Plaintiffs, were never warned about the dangerous vehicle they purchased, possessed and used.

As a proximate result, B.M. and C.M. died and Plaintiffs suffered damages.

### B.   STRICT LIABILITY

27.     Plaintiffs incorporate the foregoing allegations and further allege the following:

28.     Ford's design of its F-150 cruise control switch was dangerous and placed people in grave danger.

29.     Among other things, Ford's design left the cruise control switch powered at all times at a voltage much higher than needed, in close proximity to highly flammable brake fluid which Ford knew could and would ignite if the switch failed.   As there was a safer alternative design available that was technologically feasible at a tiny cost to Ford, and as the defective design was a producing cause of the deaths of B.M. and C.M., Ford is liable to Plaintiffs for damages.

## V.   DAMAGES

As the actions and omissions of Defendant, their agents, employees, and/or representatives, proximately caused and/or were the producing cause of the injuries and damages to Plaintiffs and were the proximate and producing cause of the wrongful deaths of B.M. and C.M. Plaintiffs assert claims individually and for damages under Texas' wrongful death and survivorship statutes.

## VI.   PRAYER FOR RELIEF

Accordingly, Plaintiffs request that the Court and Jury:

A.   Award compensatory damages against Defendant;

B.   Award pre-judgment and post-judgment interest at the highest rate allowable under the law;

C.   Award Costs of Court; and

D.   Grant such other and further relief as appears reasonable and just, to which Plaintiffs

may be entitled.

Respectfully submitted,

THE EDWARDS LAW FIRM
The Haehnel Building
1101 E. 11th St.
Austin, Texas 78702
Tel.    512-623-7727
Fax.    512-623-7729
jeff@edwards-law.com


By_____
JEFF EDWARDS
State Bar No. 24014406

**ATTORNEY FOR PLAINTIFF**